BRANDON SQUIRES, A MINOR, BY HIS GUARDIAN AND NEXT FRIEND BURKE SQUIRES, BURKE SQUIRES AND BONNIE SQUIRES, APPELLANTS, *v.* SIERRA NEVADA EDUCATIONAL FOUNDATION INC., DBA CAMBRIDGE SCHOOL, RESPONDENT.

No. 21666

December 20, 1991                    823 P.2d 256

*Geoffrey White,* Reno, for Appellants.

*Erickson, Thorpe & Swainston, Ltd.,* and *John A. Aberasturi,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:

Brandon Squires (Brandon) attended Cambridge School from pre-kindergarten through second grade. Brandon's parents, Bonnie and Burke Squires (the Squires), chose to send him to Cambridge because they suspected that he might experience difficulties learning to read, based upon his difficulties in articulating words and the difficulties his father had experienced in learning to read. In her affidavit, Bonnie Squires states that she expressed this concern to the principal of Cambridge, Linda Fisher, when she was choosing a school for Brandon. Ms. Fisher specifically advised her that Cambridge had the capabilities and the facilities to diagnose and remediate any reading difficulties which might develop. In addition, Bonnie states that Ms. Fisher told her that Cambridge could provide an education superior to that provided by public schools because of smaller classes, individualized instruction, and a highly qualified staff.

The Squires contend that, in reliance upon Ms. Fisher's statements, they elected to send Brandon to Cambridge, foregoing a public school education. Brandon appeared to be progressing normally at Cambridge. All of his progress reports were positive, except his second grade fourth quarter report, which noted that

his reading ability was significantly below grade level and recommended that he repeat the second grade. The school had not provided the Squires with any previous indication that Brandon was having difficulties. The Squires failed to detect this problem at home, in part because Brandon was capable of memorizing stories and reciting them back to people, and in part because of Burke Squires' own reading difficulties.

During part of the time that Brandon was attending Cambridge, Bonnie worked as a secretary at the school. During this time, she personally observed Brandon's first grade teacher, Betty Weiser, who was also the school's administrator, spending a great deal of time on administrative duties. Consequently, many of Brandon's first grade classes were taught by inexperienced teaching interns.

The Squires obtained an affidavit from Verlinda Thompson, an expert in the teaching of reading, stating that Brandon's reading deficiencies were more likely than not the result of inappropriate instruction and intervention, or lack thereof, during Brandon's four years at Cambridge School. Ms. Thompson based her conclusion on the fact that the standardized tests given to Brandon indicated that he is an extremely bright boy with language comprehension skills far in advance of his chronological age, and that none of the documents she reviewed indicated any evidence of an organic component to Brandon's reading disability.

After Brandon's second grade year at Cambridge, the Squires transferred him to a public school where, as a result of his reading deficiencies, he was required to repeat the second grade. As of last February, Brandon was twelve years old and in the fourth grade, and he had been identified as a special education student. Brandon alleges injuries consisting of permanent injury to his mental and emotional development and the pain, frustration, and shame associated with being held back. Furthermore, according to Verlinda Thompson's affidavit, Brandon is likely to suffer future harm because, as a very bright older child with markedly discrepant reading skills, he possesses traits which would characterize him as being at a high risk of dropping out of school. Brandon's parents also allege monetary damages in the form of wasted tuition expenses, the cost of remediation services at the University of Nevada at Reno's Reading Clinic, and three years of private tutoring.

Appellants brought several claims for relief before the district court, alleging primarily (1) educational malpractice, (2) misrepresentation, and (3) breach of contract. Cambridge submitted a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to NRCP 12(b)(5). The district judge granted this motion, because he was persuaded that there is no standard for instructing or testing students and because he con-

cluded that as a matter of policy, teachers should not be confined to a limited number of teaching methods. We reverse and remand.

The standard of review for dismissals under NRCP 12(b)(5) is rigorous. The court "must construe the pleading liberally and draw every fair intendment in favor of the [appellant]." Merluzzi v. Larson, 96 Nev. 409, 411, 610 P.2d 739, 741 (1980) (citing San Diego Prestressed Concrete Co. v. Chicago Title Ins. Corp., 92 Nev. 569, 573, 555 P.2d 484, 487 (1976)). However, the appellant must have presented some relevant legal authority in support of his contention. Plankinton v. Nye County, 95 Nev. 12, 588 P.2d 1025 (1979). In addition, all factual allegations of the complaint must be accepted as true. Hynds Plumbing v. Clark Co. Sch. Dist., 94 Nev. 776, 777, 587 P.2d 1331, 1332 (1978). Under this standard of review, the Squires have clearly alleged claims of breach of contract and negligent and intentional misrepresentation upon which relief may be granted.

This case presents issues of first impression to this court. A cause of action in contract for educational claims was recognized in dicta in Paladino v. Adelphi University, 454 N.Y.S.2d 868, 873 (N.Y.App.Div. 1982), which held that a cause of action in contract can exist against a private educational institution when that institution provides no services or does not provide certain specified services, such as an agreed upon number of hours of instruction. In *Paladino,* parents sued a private elementary school because their fifth grader failed to perform at grade level and had to repeat the fifth grade. *Id.* at 870. The court ruled in favor of the school, but only because the parents' claim of misrepresentation based upon misleading progress reports was contradicted by the record, which overwhelmingly demonstrated that the parents were in fact aware of their child's academic deficiencies. *Id.* at 874. In addition, the parents' claim that the school failed to provide necessary tutorial services was contradicted by the record, which showed that the child had received tutoring in the fourth and fifth grades. *Id.* at 875.

The claims presented by appellants in the instant case are similar to those presented in *Paladino.* The Squires allege that a contract existed, whereby they promised to pay tuition in exchange for Cambridge's promise to provide Brandon with a quality elementary education. Unlike the contract alleged in *Paladino,* the quality education for which the Squires contracted was to include certain specified services, such as appropriate individualized reading instruction and adequate diagnostic and remediation services should reading problems develop. Thus, in the instant case, the contract is alleged to contain sufficiently particularized services to support a claim for breach of contract.

The allegations of misrepresentation in the instant case are also similar to those in *Paladino*. The Squires allege that Ms. Fisher made specific representations as to the quality of Cambridge's educational offerings in response to the Squires' specific questions concerning Brandon's potential reading problems. As in *Paladino*, the Squires allege that Brandon's teachers sent progress reports which negligently or knowingly misrepresented that he was not having academic difficulties.[1] In *Paladino*, however, these claims of misrepresentation were rejected because there was evidence suggesting the parents had actual knowledge of their child's problems in school. In the instant case, interpreting the facts favorably to appellants, there is no evidence contradicting appellants' claim. Therefore, appellants' claim of misrepresentation is also valid.

Because we conclude that appellants have successfully articulated claims of breach of contract and misrepresentation upon which relief may be granted, we decline to address the justiciability of the claim for educational malpractice at this time. Accordingly, we reverse and remand for trial.

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., concur.

---

[1]The allegations of misrepresentation sound in negligence, except for the claim that the statements made by Cambridge were known to be false. For the purposes of this appeal, we will treat this cause of action as one for negligent misrepresentation. If the appellants choose to proceed on the theory of intentional misrepresentation as well as negligent misrepresentation and they believe they have stated a cause of action upon which to base such relief, that matter can be resolved by the district court.