DEBORAH BRATCHER, Appellant, *v.* CITY OF LAS VEGAS; LAWRENCE D. CANARELLI; GOWAN PROPERTIES, INC., and AMERICAN WEST HOMES, INC., Respondents.

No. 27508

April 24, 1997                                    937 P.2d 485

*Kossack Law Offices,* Las Vegas, for Appellant.

*Keefer, O'Reilly, Ferrario & Eskin,* Las Vegas; *Bradford R. Jerbic,* City Attorney and *Val Steed,* Chief Civil Deputy City Attorney, Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

Deborah Bratcher (Bratcher) sued the City of Las Vegas (the City) and developers Lawrence Canarelli (Canarelli), Gowan Properties (Gowan), and American West Homes (American West), seeking to rescind the annexation of her property by the City and to collect damages from the developers. Bratcher claimed that she had no notice of the annexation petition that the developers filed with the City which included her property; however, Bratcher had knowledge of a sewer connection agreement (sewer agreement) listed in her title insurance report which provided that the City "may" annex certain property, including the property now owned by Bratcher. The district court concluded that Bratcher was bound by the language of the sewer agreement, by which her predecessors in interest had agreed to annexation in return for sewer service, and dismissed Bratcher's claims.

## FACTS

In November of 1991, Gowan owned real property in the vicinity of Ft. Apache Drive and Gowan Road in Clark County, Nevada. This property was outside, but adjacent to, the Las Vegas city limits. On November 13, 1991, Gowan entered into the sewer agreement with the City to obtain services for this property. Gowan's president, Canarelli, signed the sewer agreement on Gowan's behalf. Pursuant to the sewer agreement, the City agreed to provide sewer services to Gowan's property and Gowan agreed "that the City may annex said described real property into its corporate boundaries as soon as it may legally do so in accordance with the then applicable laws." The sewer agreement further provided that it was "binding upon the heirs, legal representatives, successors and assigns of" Gowan. On the same day, Canarelli signed a "Petition for Annexation" (1991 petition) covering the same property to which the sewer agreement applied.

The sewer agreement and 1991 petition were recorded with the Clark County Recorder on February 7, 1992. The sewer agreement and the 1991 petition described the property to which they applied and referred to "EXHIBITS 'A' AND 'B' (ATTACHED)." Bratcher's lot was part of the property described in Exhibit B. Exhibit A was filed on the same day as the sewer agreement and the 1991 petition (February 7, 1992); Exhibit B was not filed until August 14, 1992, at which time the sewer agreement was re-recorded with Exhibits A and B. For unknown reasons, Exhibits A and B were not attached to the 1991 petition. Apparently, the re-recorded sewer agreement with Exhibits A and B attached was filed in a different recording book than that in which the 1991 petition had been filed with the original sewer agreement that just had Exhibit A (which did not include Bratcher's property description) attached to it.

American West purchased[1] the property from Gowan and subdivided the property into individual single family homes and lots. Bratcher bought one of these lots from American West and closed and recorded the deed on August 4, 1993, over one year after the 1991 petition and sewer agreement had been filed, and almost a year after the filing of Exhibit B. Prior to closing, Bratcher had a title search performed, which listed the sewer agreement as an encumbrance against the lot she planned to purchase. According to Bratcher, although she had notice of the sewer agreement before she purchased her lot, she had no notice of any impending

---

[1]We find nothing in the record memorializing this alleged purchase. Moreover, there are indices that Canarelli was the president of American West, in addition to Gowan.

annexation; she was not aware of the 1991 petition, presumably because Exhibit B, which described her property, was never attached to the 1991 petition and the 1991 petition was not filed with the re-recorded sewer agreement which did have Exhibits A and B attached. Accordingly, Bratcher alleges that she bought the property from American West "in reliance that the property was outside the City limits and in Clark County where she would enjoy lower property taxes."

On August 24, 1993, acting as president of both Gowan and American West, Canarelli filed a second "Petition for Annexation" (1993 petition). Included in this second petition was all of the property described in Exhibits A and B attached to the sewer agreement and referenced in the 1991 petition, along with additional acreage in the Ft. Apache Drive vicinity. The 1991 petition with Exhibits A and B encompassed approximately 97 acres, whereas the 1993 petition covered approximately 360 acres. According to Canarelli, Gowan, and American West (collectively "the developers"), the only reason for filing the 1993 petition was to add property not covered by the 1991 petition (an additional 260 plus acres).

Conversely, Bratcher contends that the developers negligently or intentionally breached a duty owed to her by committing forgery in representing that they owned her lot as of August 24, 1993, three weeks after she had purchased her lot from American West, with the intent to deny her the opportunity to contest or negotiate the terms of the annexation of her property by the City. However, according to the City, it never believed that the developers were claiming ownership of Bratcher's lot in the 1993 petition, but assumed that the developers were merely consolidating the 1991 petition with the additional land to be annexed (which was still owned by the developers and several other individuals/entities who signed the 1993 petition) in the 1993 petition. On February 11, 1994, the city council passed an ordinance annexing the 360 acres described in the 1993 petition to the City. The 1993 petition included the land described in the 1991 petition, which referred to Exhibit B, and Exhibit B included the lot purchased by Bratcher in 1993.

There are two alternative annexation procedures. Where unanimous property owner consent to annexation has not been obtained, the formal or "long form" procedure set forth in NRS 268.578 through 268.596 must be followed.[2] However, where all

---

[2] The statutory "long form" provisions include the right to protest the annexation (NRS 268.572(5) and 268.586(2)); the right to a public hearing on the issue within certain prescribed time limits (NRS 268.584(2)); the right (as a record owner of property in the territory to be annexed) to receive notice of the hearing through certified mail (NRS 268.584(3) and

owners of the property to be annexed have signed an annexation petition, the alternate summary or "short form" procedure found in NRS 268.597 may be invoked. NRS 268.597 provides:

> As an alternative to the procedures for annexation set forth in NRS 268.578 to 268.596, inclusive, *the governing body of a city may annex territory* which meets the requirements of subsection 2 of NRS 268.580 [(i.e., contiguity with the City and not within another town or city's boundaries)] *if all of the owners of record of individual lots or parcels of land within the area sign a petition requesting the governing body to annex the area to the city.* If the petition is accepted by the governing body, the governing body may proceed to adopt an ordinance annexing the area and to take such other action as is appropriate to accomplish the annexation.

(Emphasis added.)

Canarelli/Gowan signed the 1991 petition, which referenced Bratcher's future lot, along with the sewer agreement which granted the City the right to annex that same land and which was binding on future purchasers; all owners of the additional land referenced in the 1993 petition had also agreed to annexation. The City followed the summary annexation procedure, believing that "100% of the ownership of the parcels included in the area had signed annexation petitions." Bratcher asserts that she did not learn of the annexation of her property until she received notice of a property tax increase from the Clark County Treasurer, dated January 23, 1995. Bratcher claims that her taxes increased by $285.62 a year as a result of annexation and that over the thirty-year life of her mortgage, the increase will cost her a total of $8,568.60.

On March 27, 1995, Bratcher filed a complaint against the City seeking recision of the annexation of her property. She contended that because she did not sign the 1993 petition, the City had erroneously followed the "short form" procedure, denying her due process and statutory rights set forth in the "long form" annexation procedure. The complaint also set forth claims against the developers, alleging that they "negligently or intentionally breached their duty to file true documents with the City with the intent to defraud the body politic" (referring to the filing of the

---

268.586(3)); the right to be heard at the public hearing (NRS 268.590(2)); the right to have a service plan adopted with respect to the City's provision of police and fire protection, street maintenance and extension, garbage collection, and other like municipal services (NRS 268.578(4)).

1993 petition describing Bratcher's lot).[3] She sought special damages against the developers (jointly and severally) in the amount of the alleged thirty-year tax increase ($8,568.60), in addition to general and punitive damages greater than $10,000.00.

The City and the developers subsequently filed motions to dismiss Bratcher's respective claims. After hearing these motions, the district judge dismissed Bratcher's complaint in its entirety as to all defendants, finding, in pertinent part:

(1) That Plaintiff is bound by the terms of the Sewer Connection Agreement dated and which appeared in her chain of title and which affirmatively established the City's right to annex the property;

(2) That Plaintiff had no basis to contest annexation or protest annexation and was deprived of no constitutional right in conjunction with the annexation.

## DISCUSSION

### Standard of review for dismissal of claims

The City filed its motion to dismiss pursuant to NRCP 12(b)(1) (lack of jurisdiction over the subject matter appearing on the face of the pleading) and 12(b)(5) (failure to state a claim). The developers filed an NRCP 12(c) motion for judgment on the pleadings and/or motion to dismiss.

We have held that:

> The standard for review for a dismissal under NRCP 12(b)(5) is rigorous as this court " 'must construe the pleading liberally and draw every fair intendment in favor of the [non-moving party].' " Squires v. Sierra Nev. Educational Found., 107 Nev. 902, 905, 823 P.2d 256, 257 (1991) (quoting Merluzzi v. Larson, 96 Nev. 409, 411, 610 P.2d 739, 741 (1980)). All factual allegations of the complaint must be accepted as true. A complaint will not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him [or her] to relief." Edgar v. Wagner, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985).

---

[3]Initially, Bratcher also raised a claim against the developers for invasion of privacy in that they "fraudulently misrepresent[ed] that Gowan and American owned Plaintiff's property." This claim was dismissed by the district court and has been abandoned on appeal.

Vacation Village v. Hitachi America, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994) (some citations omitted).

*The district court erred in concluding that the City properly invoked the annexation procedure set forth in NRS 268.597 and in dismissing Bratcher's claim for recision of the City's annexation of her property*

Bratcher argues that although the district court properly found that she was bound by the terms of the sewer agreement, it erroneously concluded that the sewer agreement affirmatively established the City's right to annex her property using the summary procedure set forth in NRS 268.597. We agree.

The 1991 sewer agreement states "that the City may annex said described real property into its corporate boundaries as soon as it may legally do so in accordance with the then applicable laws." The "then applicable laws" (those in effect at the time of the annexation in 1993) required that the procedures set forth in NRS 268.578-.596 be followed; because Bratcher did not sign the 1993 petition, "all of the owners of record of individual lots or parcels of land within the area" to be annexed did not agree to annexation, and thus, the summary procedure of NRS 268.597 was unlawfully invoked. NRS 268.597. Therefore, the City was without jurisdiction to annex Bratcher's property described in the 1993 petition, and the annexation ordinance was void from its inception. *See* County of Clark v. City of North Las Vegas, 89 Nev. 10, 14, 504 P.2d 1326, 1329 (1973) ("The absence of adequate petitions pursuant to NRS 268.582, rendered subsequent actions by the City relative to Annexations Nos. 38 and 41 wholly nugatory, and the two annexation ordinances adopted by the City of North Las Vegas are therefore invalid.").

The City argues that the authority to annex Bratcher's property came from the 1991 petition, signed by Bratcher's predecessor in interest, and that the 1993 petition was "mere surplusage" as to Bratcher's property with no effect on the validity of the 1991 petition. Thus, the City contends that the 1991 petition and the sewer agreement, both signed in 1991 by the then owners, are valid and binding on Bratcher, even though annexation did not occur until after Bratcher purchased her lot.

We conclude that the City could not have relied on the 1991 petition, but instead annexed Bratcher's property in sole reliance on the 1993 petition in which her land was described but which had been signed only by the *former* owners of her land, the developers. The annexation ordinance must contain "accurately described" external boundaries of the territory to be annexed. NRS 268.596. The 1991 petition did not contain such a description. Moreover, in 1991, the land at issue could not have been

annexed because it was not yet contiguous to the City. *See* NRS 268.580(2)(a). We also look to the record; specifically, correspondence preceding the submittal of the ordinance to the City Council in which the City clearly referred to the 1993 petition and made no mention of the 1991 petition. Furthermore, the City's Department of Community Planning and Development sent Bratcher a copy of only the 1993 petition after notifying her of the tax increase (due to annexation of her property) in January, 1995.

Because Bratcher had no notice of the 1991 petition (because it had no description of her property, was not filed with the sewer agreement, and did not appear on her title report) and because the City did not (and could not) annex her property based upon the 1991 petition, the only document binding upon Bratcher at the time of the 1993 annexation was the sewer agreement. We disagree with the lower court's finding that the sewer agreement, standing alone, enabled the City to lawfully invoke summary procedures.

The provision at issue in the sewer agreement (i.e., "the City may annex . . .") was not the equivalent of an annexation petition signed by "all the owners of record of individual lots or parcels"—a necessary prerequisite to invocation of NRS 268.597's summary procedure. The sewer agreement granted the City discretionary authority to annex Bratcher's property, but did not authorize annexation by summary procedure. Although the City could have annexed Bratcher's property and all of the other property described in the sewer agreement, even in the absence of the approval of the majority of landowners, Bratcher was denied the statutory right to attempt to persuade the city council not to pass the ordinance and to negotiate a service plan.

Both the City and the developers assert that Bratcher's claim is barred by the statute of limitations and by the equitable doctrine of laches. We conclude that these arguments are without merit. NRS 268.604(1) provides:

> Any person appearing and protesting such annexation *at the public hearing,* as provided in NRS 268.590, or any person filing with the city clerk of the annexing city a written protest to such annexation within 15 days after the conclusion of such public hearing, who believes that he will suffer material injury, by reason of the failure of the governing body of the annexing city to comply with the procedure set forth in NRS 268.570 to 268.608, inclusive, or to meet the requirements set forth in NRS 268.580 as the same applies to his property, shall have the right, *within 30 days from the*

> *date of the adoption of the annexation ordinance, to apply to the district court . . . for an order staying the effectiveness of such annexation ordinance.*

(Emphasis added.)

We conclude that the thirty day statutory limit contained in NRS 268.604 does not apply in the instant circumstances. This provision applies only to annexations made via the formal, ''long form'' procedure. Bratcher could not have appeared or protested at an NRS 268.590 public hearing because such a hearing was never held; therefore, the statute does not apply to the rare scenario where a landowner challenges a summary annexation. Because we hold that the statute of limitations has not run on Bratcher's claim, laches will apply only under ''[e]specially strong circumstances.'' *See* Building and Constr. Trades v. Public Works, 108 Nev. 605, 610-11, 836 P.2d 633, 636-37 (1992). Although it may be burdensome for the City to have to re-annex the land at issue by following formal procedures, it would not be inequitable to allow Bratcher's claim to proceed. Bratcher did file her complaint within thirty days of receiving the 1993 petition in which someone else listed her land as part of the territory to be annexed. We conclude that her delay was not unreasonable.

*The district court properly dismissed Bratcher's claim against the developers for negligent and intentional breach of duty by forgery in including her property in the 1993 annexation petition*

Bratcher accuses Canarelli and the other developers of having committed forgery by signing the 1993 petition as owners of property which included the lot she had recently purchased from American West.[4] NRS 205.090 provides, in pertinent part:

> A person who falsely makes, alters, forges or counterfeits any record, or other authentic matter of a public nature . . . with the intent to damage or defraud any person, body politic or corporate . . . is guilty of forgery . . . .

Bratcher argues that in signing and filing the 1993 petition which listed her property—property no longer owned by the developers—Canarelli had an intent to deprive her of a public hearing and service plan and to defraud public officers so that the appropriate ''long form'' annexation procedures would not be

---

[4]Bratcher further cites NRS 207.230, which provides that it is a misdemeanor for a person to do any act ''for the doing of which a license or other authority is required by law, without having such license or other authority as required by law.'' *See* NRS 207.230.

followed. She further asserts that the developers breached a duty of care owed to her, causing her damage in the form of an increased tax burden, and thus that they were liable in negligence and negligence *per se*.

The forgery statute is inapplicable because forgery involves a false document, not mere misstatements of fact within a document. *See* Winston v. Warden, 86 Nev. 33, 34, 464 P.2d 30, 31 (1970). The *Winston* court concluded:

> "It is an indispensable requirement of forgery that the writing be false. It may have been false in its inception or may have been made so by subsequent tampering with what was originally genuine; but it must be a false writing. *In this connection it is essential to distinguish between a false instrument and false statements in an instrument. No amount of misstatement of fact and no amount of fraud will make a false instrument out of what purports to be the very instrument which it is in fact and in law.*"

*Winston,* 86 Nev. at 34, 464 P.2d at 31 (quoting Perkins on Criminal Law 296 (Foundation Press 1957)) (emphasis added).

Bratcher asserts that *Winston* is not on point; we disagree. In *Winston,* the defendant signed his true signature to a check drawn on a bank in which he held no checking account. The court concluded that such action was not forgery because the instrument was genuine, notwithstanding false statements contained therein. *Id.* at 35, 464 P.2d at 31. Bratcher's claim would more properly be labeled common law fraud. Therefore, the court did not err in dismissing her claim of intentional or negligent breach of duty based on forgery because the facts (which are not disputed—Canarelli did sign the 1993 petition and Bratcher's lot was included in the land description) cannot support her claim.

### CONCLUSION

We conclude that the district court erred in dismissing Bratcher's claim for recision against the City; therefore, we reverse and remand the case for further proceedings on this issue. We further conclude that Bratcher failed to state a claim in her allegations of intentional and negligent breach of duty by forgery against the developers; therefore, we affirm that portion of the district court's order granting the developers' motion to dismiss on this claim.[5]

---

[5]THE HONORABLE A. WILLIAM MAUPIN, Justice, voluntarily recused himself from participation in the decision of this appeal.