*937
 
 OPINION
 

 By the Court,
 

 Shearing, J.:
 

 Appellant Yolanda Foster (Yolanda) filed a complaint against respondents Washoe County (the County), Washoe County Social Services (Social Services), several Social Services employees, Court Appointed Special Advocate (CASA), and CASA Johnye G. Colling (Colling). Yolanda alleged that the respondents had been negligent in investigating ex-husband Tyrone Duffs report that Yolanda and her new husband, William Foster (Foster), had abused Yolanda and Duffs minor children. The district court dismissed Yolanda’s complaint for failure to state a claim, concluding that respondents were statutorily immune from suit, and that CASA and Colling were judicially immune as well.
 

 FACTS
 

 Yolanda and Duff married in 1975 and had two children— Cameron in 1982, and Aaron in 1985. Their decree of divorce
 
 *938
 
 on December 8, 1988, granted them joint legal custody of both children. The decree granted Yolanda primary physical custody of Cameron and Aaron and granted Duff reasonable visitation rights. On December 23, 1988, Yolanda began a romantic relationship with Foster, a convicted felon, whom she subsequently married. Duff filed a motion to change physical custody of the children to himself based upon Yolanda’s association with Foster. On January 25, 1989, the district court entered a temporary protection order (TPO) precluding Foster from being in the presence of Cameron and Aaron.
 

 Pending a full hearing, the district court modified the divorce decree, vesting Yolanda and Duff with alternating weeks of physical custody. During a September 1989 hearing, the district court heard evidence that Duff had been physically abusive to Yolanda and the boys, whereas Foster had never abused the boys. The court ordered the return of primary physical custody to Yolanda, and dissolved the TPO against Foster.
 

 In May 1990, Duff and his future-wife, Linda, alleged that Cameron and Aaron were engaging in “aberrant sexual behavior.” In August 1990, Duff hired Linda Peterson, Ph.D. (Dr. Peterson) to interview Cameron and Aaron regarding sexual abuse. During that interview, the boys stated that no one had abused them. However, in September 1990, the boys told Dr. Peterson that Linda’s nephew, identified as a twelve-year-old named “Chris,” had sexually abused them while they were visiting Linda’s relatives in Doyle, California. Cameron and Aaron had spent time in Doyle prior and subsequent to the time Duff noted their allegedly “aberrant sexual behavior.”
 

 On October 10, 1990, Dr. Peterson reported to Noelle Collen, an employee of Social Services, that Aaron and Cameron had told her that a boy named Chris had forced them to perform sexual acts while they were visiting Linda’s parents. Dr. Peterson also reported that the boys had admitted lying to Duff with regard to Foster. Dorothy Meline, a Social Services employee, signed and ratified Dr. Peterson’s report, and another Social Services employee, Shirley Alcantar, also signed the report and was assigned to investigate the claims contained therein. No police report based upon Dr. Peterson’s October 10, 1990 report was ever filed.
 

 On October 16, 1990, Duff filed a report with Social Services alleging that Cameron and Aaron had been abused by Yolanda and Foster. Duff subsequently filed a police report accusing Foster of sexually abusing the boys, and applied for a TPO against Yolanda and Foster. Although not entirely clear from the complaint, it appears that a TPO against Yolanda and Foster was granted on November 15, 1990, on an ex-parte basis, and the boys were placed in Duff’s custody.
 

 
 *939
 
 On November 15, 1990, Detective James Overton of the Reno Police Department began investigating Yolanda and Foster on Duffs allegations of abuse. On February 8, 1991, Duff was granted temporary physical custody of Cameron and Aaron; the order granted Yolanda visitation on the condition that Foster not be in the children’s presence. The February 8, 1991 order vesting temporary physical custody with Duff remained substantially in place until July 9, 1993.
 

 However, on May 13, 1991, the Washoe County District Attorney’s Office declined to proceed on Duff’s criminal complaint against Yolanda and Foster; the district attorney allegedly stated:
 

 Cameron Duff . . . consistently stated that nothing has happened. Aaron Duff seems to give a different story each time he is asked about any sexual misconduct. Considering the status of the child custody and the battle that has occurred there, as well as the negative statements concerning the character of the father . . ., I do not see how we can place any reliability on his story in trying to prove a case in this matter.
 

 The State’s case against Yolanda and Foster remains closed.
 

 Notwithstanding the State’s failure to prosecute, Yolanda alleges that unidentified Social Services employees continued to contact Detective Overton with allegations of Yolanda’s and Foster’s misconduct. On June 3, 1991, Detective Overton executed a search warrant at Yolanda’s and Foster’s residence, but found nothing incriminating. In July 1991, the district court assigned a CASA to the case; CASA Colling reported to the court that after speaking with the boys, Duff, Linda, Detective Overton, Social Services employees, Dr. Peterson, and Yolanda, she believed that Yolanda’s visitation with Cameron and Aaron should be restricted.
 

 Prior to Colling’s recommendation, Yolanda’s attorney had sent a list containing the names of nineteen people whom he suggested that Colling interview regarding the sexual abuse allegations against Yolanda and Foster. Yolanda asserts that she met with Colling on only one occasion for a period of less than two minutes, and that Colling never interviewed Foster or their friends, family, and neighbors. From August 26, 1991, through March 24, 1993, various motions were filed and hearings were held concerning the custody of Cameron and Aaron who had remained in Duff’s custody. Yolanda alleges that Social Services never disclosed to the court allegations of Cameron and Aaron against Linda’s nephew, “Chris,” as described in Dr. Peterson’s October 10, 1990 report.
 

 
 *940
 
 Between July 6 and 9, 1993, the district court conducted hearings on a motion by Duff to modify custody, so as to grant Duff full custody. On July 7, 1993, the lower court entertained a motion made by Cameron’s and Aaron’s then-attorney requesting that primary physical custody be restored to Yolanda immediately, based upon the testimony of several doctors.
 

 According to Yolanda’s complaint, the district court immediately returned physical custody of both boys to Yolanda based upon expert testimony of a court-appointed psychologist “that the emotional abuse inflicted upon Aaron . . . and Cameron ... by . . . Duff strongly outweighed the slight-to-nonexistent possibility that either or both Mr. Foster and Yolanda . . . engaged in inappropriate sexual conduct.” Ón July 26, 1993, the district court found that (among other things) Duff had serious psychological and/or emotional disorders; that Duff deliberately impaired Yolanda’s relationship with her children; and that the sexual abuse allegations were unfounded. The court awarded full legal and physical custody of Cameron and Aaron to Yolanda.
 

 During one of the 1993 custody hearings, another Social Services employee, Michelle Lucier, had testified that:
 

 [T]he standard and customary procedure of SOCIAL SERVICES personnel is to direct the reporting party to actually file a police report with a law enforcement agency regarding the sexual abuse; and, to follow-up with the reporting party to insure that a police report had been filed with the local law enforcement agency consistent with the intake report.
 

 On July 7, 1995, Yolanda filed the complaint at issue, individually, and as guardian ad litem to Cameron and Aaron. Specifically, the complaint asserts that the County, Social Services, Collen, Meline, and Alcantar were negligent in (1) failing to follow established procedure because they failed to check that a report based on Dr. Peterson’s report had been filed with local law enforcement; and (2) failing to adequately investigate the Duff case. The complaint further asserts that CASA Colling
 
 [1]
 
 failed to adequately investigate the “wrongful allegations of sexual misconduct’ ’ against Yolanda and Foster, resulting in the same injuries stated above.
 

 On December 4, 1995, all of the respondents filed a joint motion to dismiss the complaint asserting
 
 inter alia
 
 that the County, Social Services, and the Social Services employees were statutorily immune from suit, that CASA and Colling were judi-
 
 *941
 
 dally immune from suit, and that neither Social Services nor CASA were entities subject to suit. On March 12, 1996, the district court issued an order granting the respondents’ motion stating: “Defendants are immune from suit pursuant to NRS 41.032(2). As court appointed guardians, CASA has the additional protection of judicial immunity. . . . ’ ’
 
 [2]
 
 Yolanda appeals from this order, individually, and as Cameron’s and Aaron’s guardian ad litem.
 

 DISCUSSION
 

 “The standard of review for a dismissal under NRCP 12(b)(5) is rigorous, as this court ‘must construe the pleading liberally and draw every fair intendment in favor of the [non-moving party].”’ Breliant v. Preferred Equities Corp., 109 Nev. 842, 845, 858 P.2d 1258, 1260 (1993) (alteration in original) (quoting Squires v. Sierra Nev. Educational Found., 107 Nev. 902, 905, 823 P.2d 256, 257 (1991)). Moreover, “[a]ll factual allegations of the complaint must be accepted as true.” Id.
 

 Under NRS 41.032(2), the County and the named Social Services employee, are only immune from liability for their discretionary acts and omissions, not ministerial acts.
 

 NRS 41.032 provides, in pertinent part:
 

 [N]o action may be brought under NRS 41.031 [(the State’s limited waiver of immunity)] or against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:
 

 2. Based upon the exercise or performance or the failure to exercise or perform a
 
 discretionary
 
 function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these,
 
 whether or not the discretion involved is abused.
 

 (Emphasis added.)
 

 The key question, then, is which kind of acts the Social Services employees were performing in the course of their investigations. It appears that the conduct of an investigation itself involves numerous decisions on possible approaches. Even though there may be internal departmental operating procedures, the
 
 *942
 
 nature of an investigation is such that it is inherently discretionary. In Pittman v. Lower Court Counseling, 110 Nev. 359, 364, 871 P.2d 953, 956 (1994), this court stated:
 

 We have defined a discretionary act as that “which require[s] the exercise of personal deliberation, decision and judgment.” A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with law, without regard to, or the exercise of, the judgment of the individual.
 

 (Citations omitted.) It is apparent that an investigation involves “personal deliberation, decision and judgment” and cannot be construed to be ministerial.
 

 The suggestion that “standard,” “customary,” and “normal operating procedure” could be equivalent to a ministerial function in an investigation is not tenable. It is a well-established principle that:
 

 A ministerial act is defined as
 
 absolute, certain, and imperative,
 
 involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion, being a simple definite duty arising under and because of stated conditions and
 
 imposed by law.
 
 A ministerial act envisions direct adherence to a governing rule or standard with compulsory result.
 

 57 Am. Jur. 2d
 
 Municipal, County, School and State Tort Liability
 
 § 120 (1988) (emphasis added).
 

 Furthermore, the public policy considerations militate in favor of immunity for child abuse investigations. In a case involving allegations of negligence in the investigation of child abuse and in the removal of a child from parental custody, the California Court of Appeals stated:
 

 “Should we hold a state or social worker acting within the scope of his or her employment is not absolutely immune from suits arising from the voluntary intervention to protect a child, we would indirectly eliminate the protection afforded to children. The state’s interest in preventing child abuse will be diminished due to fear of retaliatory suits. The state and its social workers would not take the child into custody until the inflicted injuries could be ‘recorded’ to meet the ‘objectively reasonable’ test of qualified immunity or until they obtain a court order which ensures absolute immunity. Such a result negates the purpose of child protective services by postponing prevention of further abuse to avoid liability.”
 

 
 *943
 
 We agree with the analysis of
 
 Jenkins.
 
 It is necessary to protect social workers in their vital work from the harassment of civil suits and to prevent any dilution of the protection afforded minors by the dependency provisions of the Welfare and Institutions Code. Therefore, social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings.
 

 Alicia T. v. County of Los Angeles, 271 Cal. Rptr. 513, 518 (Ct. App. 1990) (citations omitted) (quoting Jenkins v. County of Orange, 260 Cal. Rptr. 645, 650 (Ct. App. 1989)). Thus, Yolanda’s general claim that all of the respondents failed to “adequately investigate the Duff case” must fail. A claim of this nature clearly implicates a discretionary function and cannot be maintained against the County or Social Services employees.
 

 Yolanda’s more specific claim that those involved failed to follow proper procedure in ensuring that law enforcement followed up on allegations against “Chris” must also fail. Foster’s own complaint refutes her claim regarding failure to report or check that a report had been filed. A complaint of sexual abuse was made in September, 1990, to Dr. Peterson. She reported it to Social Services in October and, shortly after, the Reno Police Department was investigating the allegations of abuse against the two boys. Since failure to report abuse to the police department is the sole basis for the allegation that a ministerial act was breached, and it is clear that the report was actually made to local law enforcement, the claim fails.
 

 The district court’s order suggests a finding of statutory immunity pursuant to NRS 41.032 for CASA and Colling. We conclude that these defendants are more properly shielded by the doctrine of quasi-judicial immunity. The Attorney General has specifically stated that CASA and its volunteers “may be considered an arm of the court.” 91-7 Op. Att’y Gen. 7 (1991). We conclude that CASA and its volunteers are entitled to the absolute immunity which extends to all persons who are an integral part of the judicial process.
 
 See
 
 Briscoe v. LaHue, 460 U.S. 325, 335 (1983). ‘ Absolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.” Butz v. Economou, 438 U.S. 478, 512 (1978).
 

 Recently, we approved the application of the doctrine of quasi-
 
 *944
 
 judicial immunity to the court-appointed psychologist who recommended during the 1993 custody hearings that custody of Cameron and Aaron be returned to Yolanda. Duff v. Lewis, 114 Nev. 564, 958 P.2d 82 (1998). We held that quasi-judicial immunity existed, notwithstanding the fact that the psychologist’s performance was found to be deficient by a professional licensing board.
 
 Id.
 
 at 571, 958 P.2d at 87. In affirming the dismissal of Duffs appeal, we noted that “[t]he court-appointed psychologist performs a valuable and integral function in assisting courts in evaluating cases such as the one now before us.”
 
 Id.
 
 at 570, 958 P.2d at 86.
 

 Likewise, CASA and its volunteers perform a similar function. In the instant case, the district court appointed CASA to aid in its judicial function of determining custody of Cameron and Aaron through investigation of the case. Therefore, CASA and Colling acted as “an arm of the court” and “performed a function integral to the judicial process.”
 
 See
 
 Lythgoe v. Guinn, 884 P.2d 1085, 1086 (Alaska 1994) (holding that pursuant to the doctrine of quasi-judicial immunity, a court appointed psychologist could not be held liable for negligent investigation, misrepresentation of statements made by third parties, and failure to perform to the state’s minimum professional standards for psychologists).
 

 CASA and its volunteers perform a valuable and integral function by assisting courts in evaluating cases involving children. “Exposure to liability could deter their acceptance of court appointments or color their recommendations.” Lavit v. Superior Court, 839 P.2d 1141, 1144 (Ariz. Ct. App. 1992). Indeed, such exposure could “produce a chilling effect upon future acceptances of court appointments” and the willingness of private citizens to volunteer their time to serve as special advocates. Seibel v. Kemble, 631 P.2d 173, 180 (Haw. 1981). Accordingly, we conclude that CASA and Colling are entitled to absolute quasi-judicial immunity, and the district court properly dismissed Yolanda’s complaint against them.
 

 For the foregoing reasons, we affirm the judgment of the district court.
 

 Springer, C. L, and Rose, Young, and Maupin, JJ., concur.
 

 [1]
 

 We note that although the caption of the complaint names both the entity CASA and the advocate Colling, individually, we find no allegations against CASA the entity in the complaint. We can only assume that Yolanda is suing CASA on a theory of respondeat superior and/or that it negligently trained Colling; however, neither theory is articulated in the complaint with respect to CASA’s (the entity) liability.
 

 [2]
 

 The respondents’ motion to dismiss also alleged that Yolanda’s individual claims were barred by the statute of limitations. However, that claim did not form the basis of the district court’s decision and this issue has not been briefed on appeal. Therefore, it will not be considered by this court.