Charles BARNARD and Rita Barnard,
Plaintiffs–Appellants,

and

Rita Barnard, Plaintiff

v.

LAS VEGAS METROPOLITAN PO-
LICE DEPARTMENT, Gary Clark,
Greg Theobald, and Steven Radmano-
vich, Defendants–Appellees.

No. 07–15539.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 21, 2008.

Filed Feb. 4, 2009.

Cal J. Potter, III, Esquire, John C. Funk, Esquire, Potter Law Offices, Las Vegas, NV, for Plaintiffs–Appellants.

Peter Maitland Angulo, Esquire, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, for Defendants–Appellees.

Before: WALLACE, THOMAS, and GRABER, Circuit Judges.

## MEMORANDUM *

Charles and Rita Barnard appeal from the district court's order granting summary judgment in favor of Appellees Las Vegas Metropolitan Police Department ("LVMPD") and Officers Steven Radmanovich, Greg Theobald, and Gary Clark ("the officers"). We affirm in part, reverse in part, and remand to the district court.

Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

In analyzing these claims, we employ the familiar analysis mandated by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), namely to determine whether (a) the facts that the plaintiff has alleged or shown make out a constitutional violation, and (b) if so, whether the constitutional right at issue was clearly established at the time of the violation. *Id.* at 201, 121 S.Ct. 2151. The Supreme Court recently modified the *Saucier* analytical framework in *Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Under *Pearson,* the decisional sequence required by *Saucier* is no longer mandatory; we are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. We thus proceed in our analysis under the Supreme Court's new guidance.

I

The district court correctly granted summary judgment as to Charles' mistaken arrest claim. For the purposes of our analysis we assume, without deciding, that the mistaken arrest constituted a violation of his constitutional rights. *Hill v. California,* 401 U.S. 797, 803–04, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

■ Even assuming a constitutional violation, however, we conclude that the officers were entitled to qualified immunity because the right was not clearly estab-

* This disposition is not appropriate for publication and is not precedent except as provided

by 9th Cir. R. 36–3.

lished at the time of the alleged violation. The Supreme Court has emphasized that when determining whether a constitutional right was clearly established, courts must look to the "specific context of the case" and not just "broad general proposition[s]." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Although *Hill* clearly established the general rule governing mistaken arrest claims, there was no clear case law at the time holding that a mistaken arrest was unconstitutional where, as in this case, the arrestee self-identifies as someone other than the subject of the warrant, and where there is other circumstantial evidence supporting the arrestee's self-identification. *See, e.g., Bingham v. City of Manhattan Beach,* 341 F.3d 939, 952–53 (9th Cir.2003) (holding that it was not objectively unreasonable for officers to arrest and detain plaintiff where the suspect's description in a validly executed warrant closely matched plaintiff's physical description). Because a reasonable officer would not have viewed Charles' arrest as unlawful at the time, the officers in this case are entitled to qualified immunity on the mistaken arrest claim because the law was not clearly established at the time with the particularity required by *Saucier.* Therefore, the district court did not err in granting summary judgment on the claim.

## II

■ The district court erred in granting summary judgment as to Charles' excessive force claim as against the officers. Under *Saucier,* we first analyze whether Charles has alleged a viable claim that his constitutional rights were violated. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct.

1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388, 109 S.Ct. 1865. In so holding, the Court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable: we must pay careful attention to (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape. *Id.* at 394–95, 109 S.Ct. 1865 (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). We have applied *Graham* to hold that a triable issue of fact exists as to excessive force if, viewing the evidence in the light most favorable to the plaintiff, it appears that officers use excessive force on an arrestee after he or she has surrendered, or is otherwise helpless, and is under complete control of the officers. *See LaLonde v. County of Riverside,* 204 F.3d 947, 961 (9th Cir.2000) (holding that subjecting an arrestee to prolonged exposure to pepper spray constituted excessive force).

Charles testified that the officers used a choke hold on him, pepper-sprayed him, and applied excessive knee pressure on his neck and back despite the fact that he had surrendered and was not resisting arrest.[1] This version of events was supported by other percipient witnesses. Charles also alleges that the force used by the officers

---

1. Counsel for Appellees claimed that the relevant portions of the deposition were not placed in the district court record, but a re-

view of the record indicates that he was not correct in that assertion.

resulted in the collapse of five vertebrae in his cervical spine and other damage, causing him permanent injuries. Therefore, construing the evidence in the light most favorable to the plaintiff, as we must at this stage of the proceedings, we conclude that the plaintiff tendered sufficient evidence to demonstrate a triable issue of fact on his excessive force claim against the individual officers.

■ We now turn to whether a reasonable officer would have known that the use of force here was unlawful, that is, whether the right to be free of excessive force was clearly established at the time of the violation. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. We conduct such analysis " 'in light of the specific context of the case.' " *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151).

*LaLonde* provides the closest specific context. There, the officer defendants were warned prior to the arrest that the arrestee was potentially dangerous, and that he owned a rifle. 204 F.3d at 951. Upon making contact with the arrestee, the officers resorted to force only after the arrestee became uncooperative and belligerent. During the arrest itself, an officer allegedly "grabbed" the arrestee through the doorway, "knocked him backwards to the ground," straddled him on the floor, and forcibly hand-cuffed him. *Id.* at 952. While performing the handcuffing, the officer allegedly "forcefully put his knee" into the arrestee's back, causing him significant pain at the time of arrest, and a continuing back injury afterwards. *Id.* The arrestee also admitted to resisting the officers during the arrest. *Id.* at 959. On these facts, we reversed judgment as a matter of law in favor of the police officers, holding that

"if the extent of the injury to [the arrestee's] back is serious enough, a jury could reasonably conclude that [the officer] used force in excess of what was reasonable, even if [the arrestee] had been resisting at the time." *Id.*

Thus, at the time of the incident at issue here, a reasonable officer would have known that it violated clearly established law to use a choke hold on a non-resisting arrestee who had surrendered, pepper-spray him, and apply such knee pressure on his neck and back that it would cause the collapse of five vertebrae in his cervical spine. Thus, construing the evidence in the light most favorable to the plaintiff, as we must at this stage, we conclude that the officers were not entitled to qualified immunity.

### III

■ The district court properly granted summary judgment as to Charles' municipal liability claim. Charles' municipal liability claim is founded primarily on the doctrine of respondeat superior, which is not cognizable as a theory of liability under 42 U.S.C. § 1983. *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir.2008). To the extent that Charles is claiming in other allegations that LVMPD had a policy of excessive force, he failed to tender sufficient evidence to create a triable issue of fact on this claim.

### IV

The district court granted summary judgment as to the Barnards' state law claims on the basis of state law discretionary act immunity pursuant to Nev.Rev. Stat. §§ 41.031–.032, citing *Foster v. Washoe County*, 114 Nev. 936, 964 P.2d 788, 791–92 (1998) and *Ortega v. Reyna*,

114 Nev. 55, 953 P.2d 18, 23 (1998). However, since the district court entered its order, the Nevada Supreme Court has modified its state law discretionary act immunity doctrine. *Martinez v. Maruszczak*, 168 P.3d 720 (Nev.2007). *Martinez* adopted the general principles of federal jurisprudence as to discretionary function immunity, *id.* at 727, specifically holding that the decisions of state actors are entitled to discretionary act immunity if the decision (1) involves an element of individual judgment or choice and (2) is based on considerations of social, economic, or political policy. *Id.* at 727. The Nevada Supreme Court clarified that "decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id.* at 729. However, it cautioned that "discretionary decisions that fail to meet the second criterion of this test remain unprotected by NRS 41.032(2)'s discretionary-act immunity." *Id.*

Because the district court has not had the opportunity to analyze the alleged state torts in light of *Martinez*, we vacate the district court's summary judgment on these claims and remand so that the district court can undertake a *Martinez* analysis in the first instance.

## V

The LVMPD's request for attorney fees is denied. The LVMPD did not request attorney fees under 42 U.S.C. § 1988 before the district court, and we generally will not hear a claim raised for the first time on appeal. *Fry v. Melaragno*, 939

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

F.2d 832, 835 (9th Cir.1991). Each party shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.**