**Francis J. AWAI, Plaintiff–Appellant,**

v.

**Edward KOTIN, Ph.D. and Coreen Boeding, Ph.D., Defendants–Appellees.**

No. 92CA0766.

Colorado Court of Appeals,
Div. V.

Nov. 18, 1993.

Rehearing Denied Dec. 16, 1993.

Certiorari Denied May 2, 1994.

Francis J. Awai, pro se.

Douglas S. Engler, P.C., Douglas S. Engler, Zuckerman & Kleinman, P.C., Michael J. Kleinman, Denver, on the Opening Brief, for plaintiff-appellant.

Cherner and Blackman, Barbara S. Blackman, Denver, on the Supplemental Opening Brief, for plaintiff-appellant.

Hall & Evans, Alan Epstein, Michael W. Jones, Denver, for defendants-appellees.

Opinion by Judge BRIGGS.

Plaintiff, Francis J. Awai (father), appeals the summary judgment entered rejecting his claims of negligence, breach of fiduciary duty, and outrageous conduct against defendants, Dr. Edward Kotin, a psychologist, and Dr. Coreen Boeding, his supervisor. Defendants had been appointed by the court to assist in post-dissolution of marriage proceedings with issues of child custody and visitation. The father contends that the trial court incorrectly determined that, as a matter of law, defendants were entitled to absolute immunity, not only for evaluations and recommendations, but also for treatment. Except for the dismissal of the claim of breach of fiduciary duty, which we affirm on different grounds, we reverse.

In January of 1986, the trial court entered permanent orders of dissolution of marriage and granted custody of the minor children to their mother. The following year, the father filed a motion to have the mother held in contempt for failing to provide information to him regarding psychological treatment provided to their daughter. The mother then sought to terminate the father's visitation, alleging he was interfering with the child's treatment.

In response to these motions, the court entered an order appointing defendant Kotin to evaluate the daughter and report to the court. The father and mother were ordered to "cooperate with the evaluator and the evaluation to his or her fullest extent."

Dr. Kotin evaluated the daughter and reported to the court in June of 1987 that she was suffering emotional disturbance. He recommended that she receive psychotherapy treatment from a neutral therapist approved by both parents and that the parents "be involved with the same therapist who treats [the daughter]." The court then entered an order which provided in pertinent part:

1. The minor child ... shall be involved in therapy with Dr. Edward Kotin with complete confidentiality.

2. Both parties herein shall participate in therapy as directed by Dr. Kotin.

3. Both parties shall have psychological testing completed on them by Dr. Kotin.

Defendant Kotin was also to advise the court by letter regarding his opinion as to

the appropriateness of extended summer visitation between the father and the minor children, "as soon as practical after beginning therapy with the minor child and the parties herein." At the time, neither defendants nor the parents objected to the order.

In October, defendants submitted a report to the court in which they recommended that the daughter continue in therapy. They also noted that "both parents have agreed to participate in a therapeutic process which will involve mediated direct talks. In addition, individual counselling with both parents will focus upon the facilitation of psychologically healthy interaction between them." By this time, the father had already begun individual therapy with defendant Kotin.

Defendants reported to the court in April of 1988 that the relationship between themselves and the father had deteriorated to the extent that they had stopped providing services to both the father and the daughter. The report included recommendations that the minor children continue with a new therapist, that the father "be involved in both individual and group psychotherapy," that his contact with the childrens' therapist be restricted, and that the father's individual therapist "should also serve as arbitrator" between the father and the mother and the father and the childrens' therapist. The defendants recommended, and the court so ordered, that if these conditions were met, including the father's continuation in personal therapy, that the father be granted extended visitation with his children that summer.

In October, the father filed the present action, asserting negligence and breach of fiduciary duty on the part of both defendants; outrageous conduct against defendant Kotin; and vicarious liability on the part of defendant Boeding. The father alleged that the treatment he had received from defendants was substandard and that as a result he had suffered psychological injuries requiring additional ongoing psychological treatment.

In response to the complaint, defendant Kotin denied negligence. However, he admitted that pursuant to court order he had evaluated, counseled, and conducted therapy with the father.

On motion for summary judgment, the trial court ruled that defendants' conduct was entitled to absolute immunity because the treatment was authorized by the court and within the scope of the court order. This appeal followed.

The father contends the trial court erred in granting summary judgment because the correct test of absolute immunity for quasi-judicial functions focuses on the nature of the defendants' conduct and its relation to the judicial decision-making function. He asserts that under this test absolute immunity should not extend to treatment, even if authorized by the court. In the circumstances presented here, we agree.

## I.

The same concerns that support judicial immunity justify the grant of absolute immunity to persons other than judges when conducting activities judicial in nature. *See Higgs v. District Court*, 713 P.2d 840 (Colo. 1985); *Acevedo v. Pima County Adult Probation Department*, 142 Ariz. 319, 690 P.2d 38 (1984).

The United States Supreme Court has summarized the rationale underlying the common law doctrine of quasi-judicial immunity:

> The ability of courts, under carefully developed procedures, to separate truth from falsity, and the importance of accurately resolving factual disputes in criminal (and civil) cases are such that those involved in judicial proceedings should be 'given every encouragement to make a full disclosure of all pertinent information within their knowledge.'

*Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96, 107 (1983) (quoting from *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

The Supreme Court has also recognized the difficulty in attempting to determine those acts for which immunity is appropriate. *See Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). It has concluded that immunity is defined and justi-

fied by the functions it protects and serves, not by the person to whom it attaches, and that the burden of proof rests with those who seek its protection:

> [W]e examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy.

*Forrester v. White*, 484 U.S. at 224, 108 S.Ct. at 542, 98 L.Ed.2d at 563.

In using this approach, courts have been cautious to recognize claims that government officials and others appointed by the court should be free of the obligation to answer in court for their acts. *See Forrester v. White, supra; Walden v. Wishengrad*, 745 F.2d 149 (2d Cir.1984).

Our supreme court has followed the analysis of the United States Supreme Court in adopting a functional approach to draw the line that separates immunity from liability. *See Higgs v. District Court, supra.* The court in *Higgs* concluded that prosecutors are absolutely immune only for those actions intimately associated with, and necessary to preserve the effective functioning of, the judicial phase of the criminal adjudicatory process. In these limited circumstances, other safeguards for the person claiming to have been injured are built into the process. These include the presence of an impartial judge and jury and the adversarial nature of the judicial process, with its opportunities for objection, cross-examination, rebuttal, and presentation of the other side's case-in-chief.

■ Quasi-judicial immunity thus extends only to those functions intimately related and essential to the judicial decision-making process. *See Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987); *Moses v. Parwatikar*, 813 F.2d 891 (8th Cir.1987); *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980); *Higgs v. District Court, supra. See also Briscoe v. LaHue, supra; LaLonde v. Eissner*, 405

Mass. 207, 539 N.E.2d 538 (1989); *Robichaud v. Ronan*, 351 F.2d 533 (9th Cir.1965).

■ This satisfies the goal of immunizing those acts necessary for "principled and fearless decision-making." *See Acevedo v. Pima County Adult Probation Department*, 142 Ariz. at 321, 690 P.2d at 40. It also provides protection for the full disclosure of all information necessary for decision making, and in this sense is analogous to witness immunity: it leaves free the path that leads to the ascertainment of truth. *See Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir.1984); *Gootee v. Lightner*, 224 Cal.App.3d 587, 274 Cal. Rptr. 697 (1990); *Moses v. Parwatikar, supra.* At the same time, under this approach, absolute immunity is "strictly limited to those situations in which the underlying rationale for the doctrine clearly shows that an absolute exception from liability is required." *See Higgs v. District Court, supra*, at 851, citing *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ Because absolute immunity derives, not from formal association with the judicial process, but from the need to protect functions intimately related and essential to the judicial decision-making process, its protection may extend to some but not all acts performed by those associated with the judicial process. For example, absolute immunity extends to activities related to a probation officer's pre-sentence report, but not to activities related to supervision of probationers. *See Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); *see also Higgs v. District Court, supra* (absolute immunity extends to a prosecutor's filing of formal criminal charges, but not to the drafting of affidavits in support of arrest and search warrants or the approval of a photo identification procedure); *McCray v. Maryland*, 456 F.2d 1 (4th Cir.1972).

■ Likewise, immunity is not established merely because a court appointee performed acts within the scope of the court's order. While performing acts within the scope of the court's order may in some circumstances be necessary to establish immunity, it is not sufficient. As the United States Supreme

Court has observed: "To conclude that because a [defendant] acts within the scope of his authority such [acts] are brought within the court's 'jurisdiction' or converted into 'judicial acts,' would lift form above substance." *Forrester v. White*, 484 U.S. at 230, 108 S.Ct. at 546, 98 L.Ed.2d at 567. Thus, it is still necessary to establish that the acts performed were intimately related and essential to the judicial decision-making process. *See Acevedo v. Pima County Adult Probation Department*, 142 Ariz. at 321, 690 P.2d at 40. ("The consistent reasoning in these cases is that each non-judicial officer performed a function pursuant to court directive, *which was related to the judicial process*." (emphasis added)).

Court-appointed therapists have been afforded immunity for their evaluations and recommendations. *See Moses v. Parwatikar, supra* (immunity from suit for competency and sanity evaluation); *Myers v. Morris, supra* (immunity for evaluation in dependency and neglect case); *Kurzawa v. Mueller, supra* (immunity for evaluation regarding termination of parental rights); *Williams v. Rappeport*, 699 F.Supp. 501 (D.Md.1988) (immunity for custody evaluation); *see also Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173 (1981); *LaLonde v. Eissner, supra.* And, because the claim against a supervisor is dependent upon the claim against the therapist, immunity has also been extended to the supervisor of a therapist making evaluations and recommendations. *See Myers v. Price*, 463 N.W.2d 773 (Minn.App.1990).

In each of these instances, the therapist's functions were intimately related and essential to the judicial process of finding facts and rendering decisions. Anything less than absolute immunity for making evaluations and recommendations could make psychologists and other experts reluctant to accept appointments or, if accepted, could inhibit full disclosure of pertinent information and taint recommendations.

■ However, treatment, unlike reports or evaluations and recommendations, is not intimately related and essential to the judicial decision-making process. Rather, it is a separate remedial function in which full disclosure may be contrary to the best interests of the patient and improper. *See Ethical Principles of Psychologists*, American Psychologist 390, 392 (March 1990) ("Principle 5: Confidentiality. Psychologists have a primary obligation to respect the confidentiality of information obtained from persons in the course of their work as psychologists. They reveal such information to others only with the consent of the person.").

Further, the focus of the psychologist in performing evaluations, providing reports, and making recommendations is not necessarily on the best interests of the subject being evaluated or any one of the parties involved in the litigation, but on aiding the court to separate truth from falsity. In contrast, the focus of the therapist in treatment is solely on the best interests of the patient. The need for absolute immunity for treatment is therefore not as compelling as the need for immunity for evaluations and recommendations. *See Koelln v. Nexus Residential Treatment Facility*, 494 N.W.2d 914 (Minn.App.1993) (reason for immunity, to encourage full disclosure of facts in a judicial setting, would not be met by giving immunity to private residential treatment center).

In addition, a party claiming to be aggrieved by an evaluation or recommendation has the opportunity to challenge the expert's opinion during the litigation. There is no similar opportunity to rectify harm caused during treatment. *See Higgs v. District Court, supra; Gootee v. Lightner, supra.*

Defendants rely on *Doe v. Hennepin County*, 623 F.Supp. 982 (D.Minn.1985) in support of their position that, because the therapy was ordered by the court, the practitioners are immune from liability for negligence associated with treatment. However, the decision in *Doe* does not compel such a result.

As part of a dependency and neglect petition settlement, the defendant psychologist in *Doe* was ordered to engage in therapy with the plaintiffs and to report to the court. Plaintiffs charged that the psychologist's report included gross distortions and preposterous conclusions based on innocuous incidents.

 **1337**

The plaintiffs there did not claim that the treatment itself was improper, but rather attacked the report for wrongfully interpreting psychological data. Such evaluation and reporting functions are distinct from treatment. To the extent dicta in the court's opinion can be read as further extending immunity to treatment merely because it was authorized by the court, we decline to follow it.

We conclude that, in the circumstances presented here, defendants have not sustained their burden of showing that an exemption from liability for negligent treatment is justified by overriding considerations of public policy.

## II.

 In his appeal, the father has not challenged, and thus we do not address, the *propriety of the trial court authorizing the same psychologist to perform evaluations and provide results and recommendations to the court as well as to provide treatment to one or both of the parties.* We nevertheless recognize that, aside from ethical implications, the difficulty is increased in drawing the line which separates any harm allegedly resulting from evaluations and recommendations from that allegedly resulting from treatment when the functions have been provided by the same person. *See Gootee v. Lightner, supra* (fn. 3) (declining to address issue of whether breach of ordinary duty of due care in treatment could be defended on grounds of privilege if the therapist's obligations included both therapy and testimony, and the allegedly negligent therapy was somehow "bound up" with the testimonial aspects of his role).

 We further recognize that mere difficulty in drawing the line should not defeat a plaintiff's claim that damages were caused by acts outside the scope of quasi-judicial immunity. However, we agree that the plaintiff has the burden of proving that any alleged injury was proximately caused by treatment. or other conduct distinct from the evaluations and recommendations.

 Here, defendants admitted in their answer that defendant Kotin had provided treatment to the father. The father's complaint alleges injuries resulting from defendants' conduct. There are genuine issues of material fact in dispute concerning the defendants' conduct, the father's claim of injuries, and the cause of those alleged injuries. The trial court therefore erred in granting summary judgment and dismissing the complaint on the basis of absolute immunity.

 However, we affirm the dismissal of the claim of breach of fiduciary duty. The factual allegations in support of this claim are the same as those in support of the claim of negligence and present the same issue for the jury. The claim for breach of fiduciary duty is therefore duplicative. *See Spoor v. Serota*, 852 P.2d 1292 (Colo.App.1992).

The parties have not raised, and we do not address, the issue whether, if any injuries did result from conduct outside the scope of absolute immunity, a separate qualified immunity may apply.

The summary judgment is affirmed as to the claim for breach of fiduciary duty. It is reversed as to the remaining claims for relief, and the cause is remanded for further proceedings consistent with this opinion.

MARQUEZ and DAVIDSON, JJ., concur.