DIEHL v DANULOFF

Docket No. 209737. Submitted October 5, 1999, at Detroit. Decided August 4, 2000, at 9:00 A.M.

Cherie Diehl, as next friend of her two minor grandchildren, brought an action in the Oakland Circuit Court against Lyle Danuloff, a licensed psychologist, alleging professional negligence in the manner in which the defendant performed a court-ordered custody evaluation following the divorce of the children's parents. The court, Deborah G. Tyner, J., granted summary disposition in favor of the defendant, finding, in part, that the defendant was entitled to absolute judicial immunity. The plaintiff appealed.

The Court of Appeals *held*:

The defendant was not entitled to governmental immunity under MCL 691.1407; MSA 3.996(107). However, summary disposition was proper because the defendant enjoyed absolute quasi-judicial immunity from suit. The court properly granted summary disposition in favor of the defendant.

Affirmed.

BANDSTRA, C.J., concurring, stated that, because the order granting summary disposition may be affirmed on the basis of quasi-judicial immunity, it is not necessary to consider the application of the governmental immunity act or hold that private psychologists performing court-ordered custody evaluations are excluded from the scope of governmental immunity under the governmental immunity act.

1. PARENT AND CHILD — CHILD CUSTODY — COURT-ORDERED PSYCHOLOGICAL EVALUATIONS — GOVERNMENTAL IMMUNITY.

Private psychologists performing court-ordered child custody evaluations are excluded from the scope of governmental immunity under MCL 691.1407; MSA 3.996(107).

2. PARENT AND CHILD — CHILD CUSTODY — COURT-ORDERED PSYCHOLOGICAL EVALUATIONS — QUASI-JUDICIAL IMMUNITY.

A court-appointed psychologist ordered to conduct a psychological evaluation and submit a recommendation to the trial court in a child custody proceeding is entitled to absolute quasi-judicial immunity from suit alleging negligence or malpractice by the psy-

chologist in the conducting of the evaluation or in the making of
the recommendation.

*Harrison & Scott, P.C.* (by *Keldon K. Scott* and
*Wayne A. Harrison*), for the plaintiff.

*Pearlman and Pianin* (by *Patrick J. Derkacz*), for
the defendant.

Before: WILDER, P.J., and BANDSTRA, C.J., and
CAVANAGH, J.

WILDER, P.J. Plaintiff Cherie Diehl, as next friend of
her two minor grandchildren, appeals as of right the
trial court's grant of summary disposition to defend-
ant Lyle Danuloff under MCR 2.116(C)(7) and (8). We
affirm.

I. FACTS AND PROCEEDINGS

Bethany and David Waterstreet, the parents of the
minor children, were involved in a divorce that began
in 1991. In 1993, David filed a petition for custody
against Cherie and Darwin Diehl, the maternal grand-
parents of the minor children. In connection with the
custody proceeding, David filed a motion seeking a
psychological evaluation of the children and family.
The trial court granted David's motion and ordered
defendant Lyle Danuloff, a licensed psychologist, to
perform a full psychological evaluation on the chil-
dren's familial unit and make a custody recommenda-
tion to the court. The trial court's order further pro-
vided that the parties were each to pay fifty percent
of the costs and fees associated with defendant's eval-
uation. Defendant conducted multiple interviews of
the family members, performed psychological testing
of all the adults involved, and observed the children

interact with the adults as part of his evaluation. Thereafter, defendant submitted a report to the trial court recommending that David be granted custody of the minor children. At the conclusion of the custody hearing, the trial court followed defendant's recommendation and granted custody of the minor children to David.

Plaintiff filed the instant lawsuit alleging professional negligence in the manner in which defendant performed the custody evaluation. Plaintiff alleged in her complaint that defendant was given information before he made his recommendation to the court that David had a history of sexual deviancy and had been sexually abusing the children. Plaintiff further alleged that after David was awarded custody of the children, he was charged with sexual abuse, pleaded guilty to a charge of indecent liberties with a child and other charges involving minors, and served a prison sentence for his convictions. The trial court granted summary disposition to defendant, finding that defendant was entitled to absolute immunity. The trial court also found that defendant did not owe a duty of care to plaintiff because, as a physician retained by the court to conduct an evaluation and make a recommendation, any duty owed was to the court. Finally, the trial court held that, despite the fact that plaintiff titled her cause of action as one alleging professional negligence, the claim was actually one alleging medical malpractice and, in the absence of a physician-patient relationship, the claim must fail. Plaintiff appealed.

II. STANDARD OF REVIEW

We review a trial court's grant or denial of summary disposition de novo. *Beaty v Hertzberg &*

*Golden, PC,* 456 Mich 247, 253; 571 NW2d 716 (1997).
When reviewing a motion for summary disposition
under MCR 2.116(C)(7), the court must accept the
nonmoving party's well-pleaded allegations as true
and construe the allegations in the nonmovant's favor
to determine whether any factual development could
provide a basis for recovery. *Amburgey v Sauder,* 238
Mich App 228, 231; 605 NW2d 84 (1999). The court
must consider any pleadings, affidavits, depositions,
admissions, or other documentary evidence that has
been submitted by the parties, *id.,* however, the mov-
ing party is not required to file supportive material.
*Maiden v Rozwood,* 461 Mich 109, 119; 597 NW2d 817
(1999). If there are no facts in dispute, whether the
claim is statutorily barred by immunity is a question
of law. *Id.*

A motion for summary disposition under MCR
2.116(C)(8) tests the legal sufficiency of the com-
plaint and may not be supported by documentary evi-
dence. *Maiden, supra* at 119; *Simko v Blake,* 448
Mich 648, 654; 532 NW2d 842 (1995). Viewing the evi-
dence in the light most favorable to the nonmoving
party, and accepting all factual allegations in support
of the claim as true, as well as any reasonable infer-
ences or conclusions drawn from the facts, the
motion should be granted only if the claim is so
clearly unenforceable as a matter of law that no fac-
tual development could justify a right of recovery.
*Maiden, supra; Smith v Stolberg,* 231 Mich App 256,
258; 586 NW2d 103 (1998).

### III. ANALYSIS

Plaintiff argues that the trial court erred as a matter
of law in finding that defendant was absolutely

immune from suit. We hold that defendant was not entitled to governmental immunity under MCL 691.1407; MSA 3.996(107), but summary disposition was nonetheless proper because defendant enjoyed quasi-judicial immunity from suit.

At issue in this case is whether a private psychologist ordered by the court to perform an evaluation of a familial unit and provide a recommendation to the court in a child custody proceeding is immune from suit for alleged negligence in conducting the evaluation. This question is one of first impression in Michigan.

## A. GOVERNMENTAL IMMUNITY ACT

To answer this question, we must first examine the scope of the governmental immunity act of 1986, which is codified at MCL 691.1407; MSA 3.996(107). In doing so, we consider the general principles of statutory construction to discern the legislative intent that may be reasonably inferred from the words expressed in the statute. Judicial construction or interpretation is neither necessary nor appropriate where the language of the statute is clear and unambiguous. Where the intent of the Legislature is clear, the proper role of a court is simply to apply the terms of the statute to the circumstances in the case. In construing a statute, we must afford the words used by the Legislature their common and ordinary meaning. *People v McIntire*, 461 Mich 147, 153; 599 NW2d 102 (1999); MCL 8.3a; MSA 2.212(1).

The governmental immunity act provides in pertinent part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(2); MSA 3.996(107)(2).]

Further, subsection 5 of the governmental immunity act provides:

A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

In *Bullock v Huster*, 209 Mich App 551, 553; 532 NW2d 202 (1995), vacated and remanded 451 Mich 884 (1996), (*On Remand*), 218 Mich App 400; 554 NW2d 47 (1996), the plaintiff, a minor child, by her next friend, filed suit against the defendant alleging that she acted in a negligent and grossly negligent manner while performing her duties as a guardian ad

litem. Specifically, the plaintiff alleged that the defendant failed to conduct an adequate investigation before making a recommendation. 209 Mich App 553. The defendant filed a motion for summary disposition, arguing that as a guardian ad litem she was absolutely immune from tort liability. *Id.* The trial court denied the defendant's motion for summary disposition and her motion for reconsideration. *Id.* at 554. A panel of this Court affirmed, holding that the defendant was not entitled to immunity based on her status as a guardian ad litem. *Id.* This Court reasoned:

> Clearly, the 1986 [governmental immunity] act represents a comprehensive review of governmental immunity. Yet, the Legislature failed to include guardians ad litem within the class of persons entitled to immunity. Where the Legislature undertakes such broad reform, the expression of one thing in the resulting statute may be deemed the exclusion of another. See *Jennings v Southwood*, 446 Mich 125, 142; 521 NW2d 230 (1994). While subsection 5 grants immunity to "judges," there is no indication that this term should be construed beyond its plain meaning to include persons appointed by judges in any capacity. The Legislature drafted subsection 5 to apply only to those persons who are the ultimate decision makers in their respective branches of government—for example, "legislators" and "elective or highest appointive executive officials." Subsections 2 and 3, regarding employees of government agencies, are inapplicable to guardians ad litem. No other provisions in the act apply to guardians ad litem. Under these circumstances, we hold that the intent of the Legislature was to exclude guardians ad litem from the scope of governmental immunity. The wisdom of this exclusion is not a matter for our review. [*Id.* at 555.]

The Supreme Court, in lieu of granting leave to appeal, vacated this Court's decision in *Bullock* and remanded the case for reconsideration in light of the

amendment of MCL 691.1407; MSA 3.996(107) by 1996 PA 143, which expressly extended governmental immunity from civil liability to guardians ad litem. 451 Mich 884. On remand, this Court held that the defendant had been acting within the scope of her authority as guardian ad litem for the plaintiff and was thus immune from suit. 218 Mich App 404.

In the instant case, defendant was a private, clinical psychologist who was appointed by the trial court to perform a custody evaluation of the minor children. In the absence of a statutory amendment of MCL 691.1407; MSA 3.996(107) to include psychologists performing court-ordered evaluations in child custody cases as individuals entitled to immunity, we must strictly adhere to the legislative intent clearly articulated in the statute that provides no indication that a private psychologist acting at the behest of a trial court is entitled to governmental immunity for alleged negligence in carrying out his duties. Certainly, if the Legislature had intended to include psychologists performing court-ordered evaluations in child custody cases as individuals entitled to immunity, it could have done so. Under these circumstances, we hold that private psychologists performing court-ordered custody evaluations are excluded from the scope of governmental immunity under MCL 691.1407; MSA 3.996(107).

B. QUASI-JUDICIAL IMMUNITY

Michigan courts have previously recognized the doctrine of quasi-judicial immunity in various circum-

stances.[1] However, whether quasi-judicial immunity applies to psychologists appointed by the court to perform custody evaluations and provide recommendations in custody proceedings has never been addressed in Michigan. Therefore, we look to other jurisdictions that have considered this issue to decide whether application of quasi-judicial immunity under these facts is appropriate.

It is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions. See *Forrester v White*, 484 US 219, 225; 108 S Ct 538; 98 L Ed 2d 555 (1988). The United States Supreme Court has noted that absolute immunity serves the dual purposes of protecting the finality of judgments and preserving the judicial independence by "insulating judges from vexatious actions prosecuted by disgruntled litigants."

---

[1] In *Maiden, supra* at 133, our Supreme Court stated that "witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity" as do "those serving in a quasi-judicial adjudicative capacity" and " 'those persons other than judges without whom the judicial process could not function.' " (Citation omitted.)

Further, in *Martin v Children's Aid Society*, 215 Mich App 88; 544 NW2d 651 (1996), this Court granted absolute judicial immunity to the Children's Aid Society, a private organization under contract with the Department of Social Services to provide services for neglected and abused children:

"Professional assistance to the Probate Court is critical to its ability to make informed, life deciding judgments relating to its continuing jurisdiction over abused children. Its advisors and agents cannot be subject to potential suits by persons, aggrieved by the Court's decision vindictively seeking revenge against the Court's assistant as surrogates for the jurist. . . .

"Mere qualified immunity is not enough protection to prevent the chilling effect of a potential suit on the exercise of a social worker's professional judgment and discretion in operating as an arm of the Probate Court to protect abused children." [*Id.* at 97-98, quoting brief of Children's Aid Society.]

*Id.* The Court has further noted that the broad scope of the immunity is not intended to protect the malicious or corrupt wrongdoer, but instead is " 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' " *Pierson v Ray*, 386 US 547, 554; 87 S Ct 1213; 18 L Ed 2d 288 (1967) (citations omitted).

In the instant case, the trial court granted summary disposition to defendant, finding that plaintiff's claim fell within the scope of absolute judicial immunity. With virtual uniformity, courts in other jurisdictions have granted quasi-judicial immunity to individuals who perform functions analogous to those performed by defendant in the present case.[2]

---

[2] See, e.g., *Stone v Glass*, 2000 WL 126917 (Ky App, 2000) (court-appointed clinical social worker performing a custodial evaluation was entitled to quasi-judicial immunity); *Foster v Washoe Co*, 114 Nev 936, 937-938; 964 P2d 788 (1998) (the respondents were properly shielded from liability by the doctrine of quasi-judicial immunity because they were appointed by the court to aid in the district court's judicial function of determining custody through investigation of the case and, as such, they were an integral part of the judicial process); *Delcourt v Silverman*, 919 SW2d 777 (Tex App, 1996) (court-ordered psychologists perform a function integral to the judicial process and are immune from suit); *Awai v Kotin*, 872 P2d 1332, 1336 (Colo App, 1993) (quasi-judicial immunity granted to court-appointed psychologist performing custody evaluations, reports, and recommendations); *Lavit v Superior Court*, 173 Ariz 96; 839 P2d 1141 (Ariz App, 1992) (the defendant psychologist, employed by the court pursuant to the parties' stipulation to have a child custody evaluation, was entitled to judicial immunity because, despite the manner in which he was chosen, the defendant was a nonjudicial officer performing a function pursuant to a court directive related to the judicial process); *S T J v P M*, 556 So 2d 244 (La App, 1990) (court-appointed psychologist was absolutely immune from liability for performance of delegated function while aiding court in resolving custody dispute); *LaLonde v Eissner*, 405 Mass 207; 539 NE2d 538 (1989) (psychologist performing a court-ordered custody evaluation is performing a judicial function and enjoys judicial immunity); *Delbridge v Schaeffer*, 238 NJ Super 323; 569 A2d 872 (1989) (psychologist accorded absolute quasi-judicial immunity in case arising out of child custody evaluation).

For example, in *Parker v Dodgion*, 971 P2d 496 (Utah, 1998), a father brought a negligence action against the defendant, a court-appointed psychologist, alleging that the defendant was negligent in performing his evaluation and administering tests profiling the plaintiff as a sexual abuser, and in recommending that the plaintiff not be given custody or visitation of his daughter. The defendant moved to dismiss, arguing, among other things, that he was entitled to judicial immunity. *Id.* The trial court granted the motion for summary judgment and dismissed the plaintiff's claims with prejudice. *Id.* The Utah Supreme Court affirmed on the basis that the defendant was entitled to absolute quasi-judicial immunity, reasoning as follows:

> The question we must answer, then, is whether a psychologist, appointed by the court to assist it in making a custody determination, performs a function integral to the judicial process. In applying the functional approach to determining immunity questions, "[t]he question is whether the activities undertaken by the party are 'functions to which the reasons for absolute immunity apply with full force.' "
>
> When a court appoints a psychologist to assist it in making a custody determination, the court is depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation. The exercise of discretionary judgment is a hallmark of a position functionally comparable to that of a judge. . . . Furthermore, in conducting such evaluations, the psychologist is essentially acting as a neutral factfinder for the court. Fact-finding is an integral part of the judicial process and a function naturally associated with judges and juries, both of whom are granted immunity from suit.
>
> In addition, courts that have addressed this issue have uniformly held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial

process and are therefore immune from suit. [*Id.* at 498 (citations omitted).]

Likewise, in *Duff v Lewis*, 114 Nev 564, 565-566; 958 P2d 82 (1998), the plaintiff, who unsuccessfully sought modification of a custody order in a post-divorce proceeding, brought a negligence action against the defendant, a court-appointed psychologist, who issued a report to the trial court recommending that the former wife be given custody of the minor children. The trial court granted the defendant's motion to dismiss on the pleadings, concluding that the defendant enjoyed quasi-judicial immunity. *Id.* at 567-569.

The Supreme Court of Nevada affirmed, holding that application of the doctrine of quasi-judicial immunity to a court-appointed psychologist making custody recommendations was proper, notwithstanding the fact that the psychologist's performance was found to be deficient by a professional licensing board, because such individuals perform a valuable and integral function in assisting courts in evaluating custody cases. *Id.* at 570-571. The Court stated:

The common law doctrine of absolute immunity extends to all persons who are an integral part of the judicial process. The purpose behind a grant of absolute immunity is to preserve the independent decision-making and truthfulness of critical judicial participants without subjecting them to the fear and apprehension that may result from a threat of personal liability. "Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." Additional reasons for allowing absolute judicial immunity include: "(1) the need to save judicial time in defending suits; (2) the need for finality in the resolution of disputes; (3) to prevent deterring competent persons from

taking office; (4) to prevent the threat of lawsuit from discouraging independent action; and (5) the existence of adequate procedural safeguards such as change of venue and appellate review."

These policy reasons apply equally to court-appointed officials such as psychologists and psychiatrists who assist the court in making decisions. Without immunity, these professionals risk exposure to lawsuits whenever they perform quasi-judicial duties. Exposure to liability could deter their acceptance of court appointments or color their recommendations. [*Id.* at 568-569 (citations omitted).]

The Supreme Court of Alaska reached the same result in *Lythgoe v Guinn*, 884 P2d 1085, 1086 (Alas, 1994), in which a court-appointed psychologist was sued for negligence by a mother who lost a custody dispute after the defendant recommended granting custody to the father. Under the terms of the order appointing the psychologist, the parties were to share the fees and costs of the psychologist. Although the defendant's report was ultimately stricken from the record after an in camera review of her qualifications and the credibility of her testimony, the trial court nonetheless dismissed the plaintiff's claim, finding that the defendant's "actions fell within the scope of quasi-judicial immunity." *Id.* The Supreme Court of Alaska affirmed the trial court's decision, holding that psychologists appointed by the court to perform custody evaluations are "an arm of the court" who serve an integral part of judicial process and are thus immune from tort liability. *Id.* at 1088.

We find no material factual distinction between the cited cases and the present matter. Here, the trial court appointed defendant to assist in the custody determination by evaluating the children's familial unit, following any procedure he deemed appropriate.

As in *Lythgoe* and *Duff,* the parties were to split the responsibility for paying defendant's fees. Plaintiff's allegations stem directly from defendant's role in the custody proceeding. In acting pursuant to his court appointment, defendant served as "an arm of the court" and "performed a function integral to the judicial process." See *Lythgoe, supra; Duff, supra.* Thus, we hold that a court appointed psychologist, such as defendant, ordered to conduct a psychological evaluation and submit a recommendation to the trial court in a custody proceeding is entitled to absolute quasi-judicial immunity. The trial court did not err in granting summary disposition to defendant.[3]

Our conclusion that defendant was protected by quasi-judicial immunity is also well supported by a number of public policy considerations, including (1) the need to save judicial time in defending suits, (2) the need for finality in the resolution of disputes, (3) to prevent the threat of lawsuit from discouraging independent action, and (4) the existence of adequate procedural safeguards. *Lythgoe, supra* at 1089, citing *Lavit v Superior Court,* 173 Ariz 96, 99; 839 P2d 1141 (Ariz App, 1992) (policy reasons for granting judicial

---

[3] We additionally note that defendant was appointed by the trial court to act as a factfinder and provide information essential to the decision-making process. In contrast to a psychologist who is appointed by the court to render treatment to a party or individual, a remedial function arguably unrelated to the fact-finding and decision-making processes of the court, a psychologist appointed by the court to evaluate a family and make a recommendation in a custody dispute is performing a function intimately related and essential to the judicial process. See *Awai v Kotin,* 872 P2d 1332, 1336 (Colo App, 1993). Indeed, defendant's focus in performing evaluations, providing reports, and making recommendations was not necessarily on the best interests of the subject being evaluated or the parties involved in the litigation, but on aiding the court to separate truth from falsity. *Id.* In this context, the need for absolute immunity is compelling.

immunity apply equally to court-appointed officials
such as psychologists who assist the court in making
decisions). Most importantly, however, if these indi-
viduals are subject to lawsuits, they will be much less
willing to serve the court in such a capacity. Expo-
sure to liability could produce a chilling effect on
court appointments and may deter psychologists from
accepting court appointments or may color their rec-
ommendations. Indeed, if confronted with the threat
of litigation, a psychologist who agrees to fill the role
of court-appointed evaluator will be less likely to
offer the disinterested, objective opinion the court
seeks in making such an appointment. *Lythgoe,*
*supra; Lavit, supra.* In light of these policy consider-
ations, we consider application of quasi-judicial
immunity to court-appointed psychologists con-
ducting evaluations and making recommendations in
child custody proceedings to be essential.

Finally, we note that our holding today does not
leave individuals allegedly harmed by the negligent
conduct of a court-appointed psychologist without
any legal recourse. There are adequate procedural
remedies and safeguards inherent in the judicial sys-
tem that hold court-appointed professionals accounta-
ble for their actions. For instance, the adversarial pro-
cess in general allows the opposing party to cross-
examine the psychologist and bring to the court's
attention any alleged deficiencies in the evaluation
and recommendation. In addition, the complaining
party is free to seek appellate review or request a
modification of the trial court's custody order. Finally,
although court-appointed psychologists may not be
held civilly liable for the consequences of their
alleged negligent acts, the trial court, in its discretion,

may impose sanctions for negligent conduct including appointing another psychologist on future cases and prohibiting the psychologist from further service to the court, and reporting the psychologist's conduct to the medical boards for further action. See *Lythgoe, supra* at 1090; *LaLonde v Eissner*, 405 Mass 207; 539 NE2d 538 (1989). See also *Martin v Children's Aid Society*, 215 Mich App 88, 97; 544 NW2d 651 (1996).

## IV. CONCLUSION

In conclusion, we find that defendant was not entitled to immunity under the governmental immunity act, MCL 691.1407; MSA 3.996(107). However, we hold that the doctrine of quasi-judicial immunity extends to court-appointed psychologists ordered to conduct evaluations and make recommendations to the trial court in custody disputes. Because defendant's evaluation and recommendation aided the trial court in determining child custody, a function integral to the judicial process, and because his services were performed pursuant to a court order, defendant was entitled to quasi-judicial immunity from plaintiff's suit.

Because our holding regarding the issue of quasi-judicial immunity is dispositive, we need not address plaintiff's remaining arguments on appeal.

Affirmed.

CAVANAGH, J., concurred.

BANDSTRA, C.J., *(concurring)*. I concur with the decision to affirm the trial court's grant of summary disposition for the reasons stated by the court in part III B of the majority's opinion. Because summary disposition can be affirmed on the basis of the quasi-

judicial immunity principles described there, I also conclude that it is unnecessary for us to consider the application of the governmental immunity act (part III A of the majority's opinion) or the propriety or applicability of *Bullock v Huster*, 209 Mich App 551, 555; 532 NW2d 202 (1995), vacated and remanded 451 Mich 884 (1996), *(On Remand)*, 218 Mich App 400; 554 NW2d 47 (1996), and further conclude we need not "hold that private psychologists performing court-ordered custody evaluations are excluded from the scope of governmental immunity under MCL 691.1407; MSA 3.996(107)." *Ante* at 127.