*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL M. HANYSZ,

        Plaintiff-Appellant,

UNPUBLISHED
August 11, 2022

v

No. 357584
Ingham Circuit Court
LC No. 20-000720-NH

HEATHER A. ZAK,

        Defendant-Appellee.

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

PER CURIAM.

Plaintiff, Paul Hanysz, sued defendant, Dr. Heather Zak, for various malpractice claims arising out of Zak's services as a psychologist in connection with a separate custody action between Hanysz and his former partner. Zak moved for summary disposition under MCL 2.116(C)(7) (immunity granted by law), and the trial court granted her motion under the doctrine of witness immunity. We agree with the trial court that Counts I and V of Hanysz's complaint, which involve an affidavit that Zak filed in family court recommending that Hanysz's parenting time be suspended, were barred by witness immunity. But the remaining claims addressed Zak's professional conduct as the family therapist, were unrelated to the affidavit, and, with one possible exception, were not barred by witness immunity. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

This case arises from Zak's provision of professional services in connection with lengthy, contentious litigation over custody and parenting time of PH, the minor child of Hanysz and his former partner, Michelle A. Pursley. Hanysz and Pursley agreed in 2010 to joint legal custody, with Pursley having sole physical custody and Hanysz having parenting time. In the custody order, the parties agreed to "participate in joint counseling with David Fugate or other mutually-agreed upon therapist in an effort to improve their ability to co-parent, and to resolve specific disputes as they arise . . . ." In 2011, Hanysz and Pursley agreed to switch from Fugate to Zak as their family therapist. Along with providing family counseling, Zak provided individual therapy to Hanysz and PH. According to Hanysz, PH's behavior deteriorated after participating in therapy with Zak,

-1-

and, in August 2018, Hanysz contacted Zak and withdrew his consent for Zak to continue to treat PH. Hanysz claimed that Zak continued treating PH against his wishes.

In September 2018, the police responded to Hanysz's residence after PH called the police and reported that Hanysz had "slammed" her head into a door. The police informed Child Protective Services (CPS) of the incident. Around this time, Zak also sent two reports to CPS involving suspected child abuse of PH perpetrated by Hanysz, based on disclosures PH made during their therapy sessions. Soon after the incident involving the police, Pursley moved to suspend Hanysz's parenting time. Attached to her motion was an affidavit from Zak in which Zak recommended that Hanysz's overnight parenting time be suspended.

Hanysz filed an eight-count complaint in which he alleged various forms of negligence, intentional infliction of emotional distress (IIED), breach of fiduciary duty, and unjust enrichment. The crux of his complaint was that Zak had been negligent and unethical in her performance as a therapist, in her treatment of PH after Hanysz revoked his consent to treatment, and in her parenting-time recommendation. Hanysz attached an affidavit of merit[1] from a licensed psychologist who opined that Zak had been negligent and violated many standards of care and ethical guidelines as a therapist. The psychologist who authored the affidavit of merit indicated that he had reviewed Zak's 2018 affidavit; the affidavit of merit did not indicate any other source of the psychologist's information about Hanysz's allegations. Zak moved for summary disposition under MCR 2.116(C)(7), arguing that she was entitled to absolute witness/quasi-judicial immunity.

Zak pointed to our decision in *Diehl v Danuloff*, 242 Mich App 120, 133; 618 NW2d 83 (2000), in which we held "that a court appointed psychologist . . . ordered to conduct a psychological evaluation and submit a recommendation to the trial court in a custody proceeding is entitled to absolute quasi-judicial immunity." Zak argued that *Diehl* applied and barred Hanysz's claims. Zak also argued that she was a "mandatory reporter" and that, once PH disclosed allegations of child abuse to her, she had to report them to CPS. Hanysz opposed Zak's motion because Zak had not been appointed by the family court to conduct evaluations or give parenting-time recommendations, thereby making *Diehl* inapposite.

The trial court granted Zak's motion for summary disposition on Counts I to VII. The court determined that quasi-judicial immunity under *Diehl* did not apply to Zak because making custody recommendations fell outside the scope of the original custody order. Instead, the court ruled that witness immunity applied to Zak's affidavit and that, apart from Count VIII for unjust enrichment, the entirety of Hanysz's complaint centered on the affidavit. Therefore, the court granted Zak's motion for summary disposition with respect to all claims except for Count VIII. The parties subsequently stipulated to entry of an order dismissing Count VIII.[2] This appeal followed.

---

[1] In a medical malpractice action, the plaintiff must file an affidavit of merit together with a complaint. *Young v Sellers*, 254 Mich App 447, 450; 657 NW2d 555 (2002); MCL 600.2912d(1).

[2] In the stipulated order, Hanysz preserved his appellate rights with respect to the dismissal of Counts I to VII of his complaint. The dismissal of Count VIII is not before us.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Summary disposition is proper under MCR 2.116(C)(7) when one party is entitled to "immunity granted by law." MCR 2.116(C)(7).

> When reviewing a motion for summary disposition under MCR 2.116(C)(7), the court must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor to determine whether any factual development could provide a basis for recovery. The court must consider any pleadings, affidavits, depositions, admissions, or other documentary evidence that has been submitted by the parties, however, the moving party is not required to file supportive material. [*Diehl*, 242 Mich App at 123 (citations omitted).]

"This Court also reviews de novo the applicability of legal doctrines, and claims of immunity." *Estate of Voutsaras v Bender*, 326 Mich App 667, 672; 929 NW2d 809 (2019) (citations omitted).

## III. IMMUNITY

On appeal, Hanysz argues that Zak's affidavit was not protected by immunity and that, even if the affidavit were protected, many of Hanysz's claims addressed matters beyond the affidavit.

"Michigan courts have previously recognized the doctrine of quasi-judicial immunity in various circumstances." *Diehl*, 242 Mich App at 127.

> [Q]uasi-judicial immunity as developed by the common law has at least two somewhat distinct branches: one branch focuses on the nature of the job-related duties, roles, or functions of the person claiming immunity, and one branch focuses on the fact that the person claiming immunity made statements or submissions in an underlying judicial proceeding. [*Denhof v Challa*, 311 Mich App 499, 511; 876 NW2d 266 (2015).]

Under this second branch, "witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity." *Maiden v Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999).[3]

> Witnesses who are an integral part of the judicial process 'are wholly immune from liability for the consequences of their testimony or related evaluations.' Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. Falsity or malice on the part of the witness does not abrogate the privilege. The privilege should be

---

[3] *Maiden* was a consolidated case. The relevant portions of *Maiden* cited in this opinion relate to the *Reno v Chung* portion of the decision.

liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. [*Id*. (citations omitted).]

Immunity for statements made during judicial proceedings "extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and *affidavits*." *Couch v Schultz*, 193 Mich App 292, 295; 483 NW2d 684 (1992) (emphasis added).

In *Diehl*, 242 Mich App at 128, we addressed "whether quasi-judicial immunity applies to psychologists appointed by the court to perform custody evaluations and provide recommendations in custody proceedings . . . ." Recognizing that "[w]ith virtual uniformity, courts in other jurisdictions have granted quasi-judicial immunity to individuals who perform functions analogous to those performed by defendant in the present case," we held that the immunity extended to psychologists such as the defendant. *Id*. at 129, 133. We reasoned that "the trial court appointed defendant to assist in the custody determination by evaluating the children's familial unit, following any procedure he deemed appropriate," and, "[i]n acting pursuant to his court appointment, defendant served as 'an arm of the court' and 'performed a function integral to the judicial process.' " *Id*. at 132-133 (citations omitted). We noted, however, an important aspect of the defendant psychologist's role for the court:

> [D]efendant was appointed by the trial court to act as a factfinder and provide information essential to the decision-making process. *In contrast to a psychologist who is appointed by the court to render treatment to a party or individual, a remedial function arguably unrelated to the fact-finding and decision-making processes of the court*, a psychologist appointed by the court to evaluate a family and make a recommendation in a custody dispute is performing a function intimately related and essential to the judicial process. [*Id*. at 133 n 3 (emphasis added).]

The *Diehl* Court listed four public policy considerations supporting the application of quasi-judicial immunity: "(1) the need to save judicial time in defending suits, (2) the need for finality in the resolution of disputes, (3) to prevent the threat of lawsuit from discouraging independent action, and (4) the existence of adequate procedural safeguards." *Id*. at 133. We reasoned that "if these individuals are subject to lawsuits, they will be much less willing to serve the court in such a capacity," and it would have "a chilling effect on court appointments and may deter psychologists from accepting court appointments or may color their recommendations." *Id*. at 134. We also noted that "[t]here are adequate procedural remedies and safeguards inherent in the judicial system that hold court-appointed professionals accountable for their actions." *Id*.

In the present case, Zak was not appointed to help the trial court make a custody determination, unlike the psychologist in *Diehl*. The custody order required Hanysz and Pursley to attend joint co-parenting counseling to improve their parenting and communication with each other. Nothing in the order indicates that Zak was appointed by the court to perform an evaluation or recommendation. Instead, this order provided that, whoever the therapist was, they were to give treatment to Hanysz and Pursley. Zak was not "appointed by the trial court to act as a factfinder and provide information essential to the decision-making process." *Id*. at 133 n 3. Rather, she was selected by Hanysz and Pursley under the custody order "to render treatment to a party or individual [i.e., to Hanysz and Pursley], a remedial function arguably unrelated to the fact-finding

and decision-making processes of the court." *Id*. The order also related only to Hanysz and Pursley. Therapy was not ordered for PH, and it appears that the parties began this on their own. Many of Hanysz's claims related to Zak's treatment of PH, which was outside the scope of the court order. Like the trial court, we do not believe that Zak was entitled to absolute, quasi-judicial immunity as *Diehl* is not on point.

Still, we agree with the trial court that Zak's affidavit and her role in the family-court proceedings rendered her entitled to witness immunity. As explained above, "[s]tatements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried," *Maiden*, 461 Mich at 134, and this immunity extends to statements made in affidavits, *Couch*, 193 Mich App at 295. Zak's affidavit was part of Pursley's motion to suspend parenting time, and it was relevant, material, and pertinent to whether Hanysz's parenting time should be suspended. Zak affirmed that she could testify to the contents of the affidavit. Thus, any claims relating to the submission of the affidavit or her role in the family-court proceedings were barred by witness immunity.[4]

But that is not the end of our analysis. The trial court determined that all of the counts in Hanysz's complaint, except for the unjust enrichment count, were based on the affidavit. We find this understandable: Counts I through V of the complaint each alleged negligence by Zak and referenced the affidavit of merit to assert that Zak breached the applicable standard of care. As noted, the affidavit of merit, in turn, stated that the affiant relied on Zak's 2018 affidavit. And Count VI and, implicitly, Count VII, were premised upon the preceding counts. Nevertheless, upon closer inspection, we disagree with the trial court's conclusion that the allegations in Counts I through VII were all based on Zak's affidavit.

Count I related to the affidavit because it addressed Zak's decision to recommend in her affidavit that Hanysz's parenting time be suspended. Count V also involved the contents of the affidavit. In Count V, Hanysz alleged that Zak breached the standard of care as a psychologist

---

[4] For the first time on appeal, Hanysz alternatively argues that witness immunity should not apply to Zak because she essentially acted as a complaining witness, a common law exception to absolute witness immunity. This argument is waived because Hanysz did not raise it before the trial court. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Even if we were to exercise our discretion to consider it, the argument lacks merit. At common law, "the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *Malley v Briggs*, 475 US 335, 340-341; 106 S Ct 1092; 89 L Ed 2d 271 (1986). Hanysz relies on the Sixth Circuit Court of Appeals' decision in *Todd v Weltman, Weinberg & Reis Co, LPA*, 434 F3d 432, 439, 444 (CA 6, 2006), in which the defendant allegedly initiated an improper garnishment proceeding, for the proposition that immunity does not apply to complaining witnesses who " 'set the wheels of government in motion by instigating a legal action.' " Quoting *Wyatt v Cole*, 504 US 158, 164-165; 112 S Ct 1827; 118 L Ed 2d 504 (1992). Zak did not "set the wheels of government in motion" by writing her affidavit; it was Pursley who filed the motion to suspend Hanysz's parenting time.

when she insisted that she was the only therapist who could help PH and that switching to another therapist would cause irreparable harm to PH. Zak's affidavit stated that one reason for her recommendation to change Hanysz's parenting time was Zak's concern that "if [PH] is not permitted to remain in counseling with me, irreparable harm will result to her psychological well-being given that she has come to rely on this support over the past seven years." The affidavit of merit also supports that Count V related to Zak's affidavit. The affidavit of merit contended that Zak violated ethical standards "when she purported herself to be the only therapist who could help this family by writing that Mr. Hanysz'[s] daughter would suffer 'irreparable harm' were the family to engage a different provider." The affidavit of merit is referring to Zak's statement in her affidavit attached to Pursley's motion to suspend parenting time. Thus, Hanysz's negligence claim in Count V is also barred by witness immunity because it directly related to the contents of Zak's affidavit.

On the other hand, the remaining five counts addressed separate matters. In Count II, Hansyz claimed that Zak breached the standard of care as a psychologist when she treated both Hanysz and PH individually. In Count III, Hanysz alleged that Zak breached the standard of care as a psychologist when she treated PH after Hanysz revoked his consent. In Count IV, Hanysz alleged that Zak breached the standard of care when she authored and released letters with confidential information without first notifying him.[5] In Count VI, Hanysz claimed that Zak had engaged in extreme or outrageous conduct that was intentional or reckless by her actions described in Counts I to V.[6] In Count VII, Hanysz summarily alleged that Zak breached her duty of care as the treating psychologist to Hanysz. These counts addressed Zak's *professional conduct* as the family therapist and were unrelated to the affidavit or Zak's role in the parenting-time litigation. In fact, based on the timeline of events, it appears that these claims occurred before the filing of Pursley's motion to suspend Hanysz's parenting time, with Zak's affidavit attached in support. Accordingly, Counts II, III, VI, and VII were not barred by witness immunity, and the record does not permit us to determine whether Count IV was barred by witness immunity.

## IV. CONCLUSION

Although the trial court was correct in its analysis of the affidavit and in the dismissal of Counts I and V, the court erred by failing to separately address Hanysz's claims and by dismissing Counts II, III, IV, VI, and VII. Therefore, we affirm the grant of summary disposition as to Counts I and V, reverse the grant of summary disposition as to the remaining counts, and remand for

---

[5] It is unclear what letters Hanysz is referring to in Count IV because nowhere in the complaint or in the affidavit of merit are any such letters clearly described. To the extent that these letters were released as part of the family-division proceedings, they would likely be protected under witness immunity similar to the affidavit. The parties can address this issue on remand.

[6] Because Hanysz's claims in Counts I and V (and possibly IV) are barred by witness immunity, only the allegations in Counts II, III, and possibly IV can be used to sustain his IIED claim in Count VI.

-6-

further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Kristina Robinson Garrett